## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BROADCAST MUSIC, INC.,** | : | No. 3:08cv570 |
| **HARRICK MUSIC, INC.,** | : | |
| **EMI VIRGIN SONGS, INC., d/b/a** | : | (Judge Munley) |
| **EMI Longitude Music,** | : | |
| **STONE DIAMOND MUSIC** | : | |
| **CORPORATION ,** | : | |
| **MICHAEL JOE JACKSON, d/b/a** | : | |
| **MiJac Music,** | : | |
| **DIMENSIONAL MUSIC PUBLISHING,** | : | |
| **LLC, d/b/a Songs of the Knoll,** | : | |
| **LOWERY MUSIC COMPANY, INC.,** | : | |
| **WARNER-TAMERLANE PUBLISHING** | : | |
| **CORP.,** | : | |
| **CAN'T STOP MUSIC, a division** | : | |
| **of Can't Stop Productions, Inc.,** | : | |
| **JAMES W. BUFFETT, d/b/a Coral** | : | |
| **Reefer Music,** | : | |
| **FOURTEENTH HOUR MUSIC, INC.,** | : | |
| **SPRINGTIME MUSIC, INC.,** | : | |
| **CHRYSALIS STANDARDS, INC.,** | : | |
| **SONY/ATV SONGS, LLC, d/b/a Sony/** | : | |
| **ATV Acuff Rose Music,** | : | |
| **ROY KELTON ORBISON, JR., d/b/a** | : | |
| **R-Key Darkus Publishing,** | : | |
| **ALEXANDER ORBISON, d/b/a Orbi-** | : | |
| **Lee Publishing,** | : | |
| **BARBARA ORBISON as Trustee,** | : | |
| **d/b/a Barbara Orbison Music** | : | |
| **Company,** | : | |
| **MUSCLE SHOALS SOUND** | : | |
| **PUBLISHING CO., INC.,** | : | |
| **RANDOR MUSIC INTERNATIONAL,** | : | |
| **INC., d/b/a Irving Music,** | : | |
| **FORT KNOX MUSIC, INC.,** | : | |
| **TRIO MUSIC CO., INC.,** | : | |
| **G. LOVE, a/k/a Garret Dutton, d/b/a** | : | |

| Chicken Platters, | : |
| :--- | :--- |
| **Plaintiffs** | : |
| | : |
| **v.** | : |
| | : |
| **IT'S AMORE CORP.,** | : |
| **T & M DRAM CORP.,** | : |
| **ALEXANDER J. TARAPCHAK, and** | : |
| **VINCE MARINARO,** | : |
| **Defendants** | : |

## MEMORANDUM

Before the court is plaintiffs' motion for summary judgment (Doc. 23). Having been briefed and argued, the matter is ripe for disposition.

## Background

This case arises out of the performance of copyrighted material at Amore Italian Ristorante in South Abington Township, Pennsylvania. Plaintiffs contend that performances at the restaurant violated their rights under the Copyright Act ("the Act"), 17 U.S.C. § 106(4).

Plaintiff Broadcast Music ("BMI") is a performing rights society, licensing the right to perform copyrighted material publicly on behalf of the owners of those copyrights. (Plaintiffs' Statement of Material Facts (Doc. 23-4) (hereinafter "Plaintiffs' Statement") at ¶ 1). The other plaintiffs are the copyright owners of the various compositions which are the subject of the lawsuit. (Id. at ¶ 2). BMI has obtained non-exclusive public performances rights for each of the compositions here in

question from the copyright holders.  (Id. at ¶ 4).  BMI grants music users like

broadcasters and owners and operators of concert halls, restaurants, nightclubs and

hotels the right to publicly perform any of the works in BMI catalog through a "blanket

license agreement."  (Id. at ¶ 5).  BMI does not operate for profit, but instead

distributes all of the money it collects (minus expenses and reserves) back to the

publishers and composers of the works.  (Id. at ¶ 6).  At the time the lawsuit was

filed, defendants owned and/or operated Amore Ristorante in South Abington

Township, Pennsylvania.  (Id. at ¶ 7).  Defendant Marinaro was a manager at the

restaurant until September 2008.  (Defendants' Counterstatement of Material Facts

(Doc. 29) (hereinafter "Defendants' Statement") at ¶ 7).  The restaurant featured

regular performances of live and recorded music.  (Plaintiffs' Statement at ¶ 7).

    Beginning in March 2005, BMI repeatedly informed defendants that they

needed permission to offer public performances of copyrighted music.  (Id. at ¶ 8).

After much fruitless negotiation, BMI instructed defendants on February 2, 2006 that

they should cease public performances of music licensed by BMI.  (Id. at ¶ 10).

Such performances continued after this demand.  (Id.).  Plaintiffs sent an investigator

to the bar, who prepared a report naming the twenty-three songs referenced in this

lawsuit as ones played by a band in the restaurant on October 6-7, 2007.[1]  (Id. at ¶¶

---

[1]The infringement allegedly involved the following compositions: "Shake Your
Booty," by Harry Wayne Casey; "Ain't Too Proud to Beg," by Eddie Holland and Norman
Whitfield; "Beat It," by Michael Joe Jackson; "Billie Jean," by Michael Jackson; "Brown
Sugar," by Mick Jagger and Keith Richard; "Disco Inferno," by Leroy Green and Ron
Kersey, "Get Down Tonight," by Harry W. Casey; "I Can't Help Myself, a/k/a Sugar Pie,

10-11). BMI had offered a license to perform the songs, but defendants declined. (Id. at ¶ 9). Defendants contend that they had a valid license to perform the songs from the American Society of Composers and Producers ("ASCAP"), another performing rights society. (Defendants' Statement at ¶ 15). This license, they contend, was valid from July 1, 2007 to December 31, 2009. (Id.). Moreover, the songs performed on those nights were performed by live bands, and defendants insist they reasonably believed that the bands had proper clearance. (Id. at ¶ 16). Plaintiffs maintain that they had registered copyrights for the songs and that BMI had the right to issue licenses to perform them. (Plaintiffs' Statement at ¶ 17).

Plaintiffs contend that between March 2005 and December 2007 they repeatedly informed defendants that they needed to obtain permission to perform BMI songs in the restaurant. (Id. at ¶ 15). Defendants insist that they repeatedly requested information on BMI's services, but did not receive it. (Defendants' Statement at ¶ 8). Their statement of facts contains numerous citations from letters written by defense counsel demanding information and complaining that plaintiffs

---

Honey Bunch," by Brian Holland, Lamont Dozier and Eddie Holland; "I Love the Nightlife AKA Disco Round," by Alicia Bridges and Susan Hutcheson, "Long Train Runnin'," by Tom Johnston; "Macho Man," by Jacques Morali, Henri Belolo, Peter Whitehead and Victor Willis; "Maragritaville," by James William Buffett; "Mustang Sally," by Bonny Rice; "My Way," by Paul Anka, J. Revaux; C. Francois; and Gillis Thibault; "Oh, Pretty Woman a/k/a Pretty Woman," by Roy Orbison and Bill Dees; "Old Time Rock And Roll a/k/a Old Time Rock 'N Roll," by George Jackson and Thomas E. Jones III; "Peppermint Twist" by Joey Dee and Henry Glover; "Respect" by Otis Redding; "Then You Can Tell Me Goodbye" by John D. Loudermilk; "This Old Heart of Mine (Is Weak For You) aka This Old Heart of Mine," by Brian Holland, Lamont Dozier, Eddie Holland and Sylvia Moy; "Twise AKA The Twist" by Hank Ballard; "Love is Like A Heat Wave a/k/a Heat Wave" by Eddie Holland, Brian Holland and Lamont Dozier; and "Booty Call," by Garrett Dutton.

have written many threatening letters but not provided any information upon which defendants could act.  (Id. at ¶ 9).  Defendants concede that BMI offered a licensing agreement, but they did not act because they were waiting for more information on what the license covered.  (Id. at ¶¶ 8-9).  Finally, defendants attempted to obtain a license from BMI, but the parties could not come to an agreement on the fees required.  (See Affidavit of Alexander Tarapchak (Doc. 28) at ¶¶ 7-8).

Plaintiffs filed the instant action on March 28, 2008.  (See Doc. 1).  The complaint raises a copyright infringement cause of action for each of 23 songs annexed to the complaint.  The complaint seeks an injunction preventing the infringement of any copyrighted material licensed by BMI, statutory damages pursuant to 17 U.S.C. § 504(c), and costs and attorney's fees.  On January 9, 2009, plaintiffs filed a motion for summary judgment (Doc. 23).  The parties then briefed the issue and the court held argument, bringing the case to its present posture.

**Jurisdiction**

As this case is brought pursuant to the Copyright Act, 17 U.S.C. § 101, *et seq.*, the court has jurisdiction pursuant to 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

**Standard of Review**

The case is before the court on defendant's' motion for summary judgment.

Granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. International Raw Materials, Ltd. v. Stauffer Chemical Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson, 477 U.S. at 248 (1986). A fact is material when it might affect the outcome of the suit under the governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex v. Catrett, 477 U.S. 317, 322 (1986).

**Discussion**

**i. Liability**

Plaintiffs seek summary judgment on their claim that defendants violated their copyrights in material performed at Amore Ristorante on October 6 and 7, 2007. United States copyright law "[vests] in the owner of a copyrighted musical composition the exclusive right to perform the work publicly for profit, but the legal right is not self-enforcing." Broadcast Music, Inc. v. Columbia Broadcasting System, Inc., 441 U.S. 1, 4 (1979). Organizations like BMI and ASCAP exist to detect inappropriate uses of copyrighted material and enforce the rights of copyright owners. Id. To prove copyright infringement in the performance context, a plaintiff must demonstrate: "(i) the originality and authorship of the composition involved; (ii) compliance with all formalities to secure copyright; (iii) that the plaintiff is the proprietor of the composition involved in the action, (iv) that the composition was performed publicly for profit at the location alleged; and (v) that the defendant did not have permission from any of the plaintiffs or a representatives [sic] of the plaintiffs for the performance." A & N Music Corp. v. Venezia, 773 F. Supp. 955, 956 (E.D. Pa. 1990).

The plaintiffs have submitted the declaration of Judith M. Saffer, General Counsel for BMI. (See Declaration fo Judith Saffer (Doc. 23-7)). Saffer's declaration relates that BMI's purpose is to acquire "non-exclusive" performance rights from

7

copyright owners.  (Id. at ¶ 2).  BMI then negotiates "the right to publicly perform any of the works in BMI's repertoire" on behalf of the copyright owners through a "blanket license."  (Id.).  With such a license, an establishment has the right to perform any work in the BMI catalog.  (Id.).  Saffer also relates that each of the works here in question has a valid copyright, and that the owners of those copyrights (the other plaintiffs) have granted BMI "the right to publicly perform these compositions and to issue public performance license agreements to music users."  (Id. at ¶ 5).  The copyright owners have also granted to BMI the right to bring court actions for infringement of public performance rights in their compositions.  (Id.).  Also attached to plaintiffs' motion for summary judgment is documentation establishing the registration and ownership of the copyrights in question.  (See Exh. A to Saffer's Statment (Doc. 24)).  Defendants do not argue that these copyrights are invalid, or that BMI has not been granted the right to enforce them in the context of public performance.  As such, the court finds that plaintiffs have proven the first three elements of their copyright claim.

Plaintiffs also submit evidence, in the form of an investigator's report, that the 23 compositions in question were performed at Amore Ristorante on October 6 and 7, 2007.  (See Exh. A to Affidavit of Lawrence E. Stevens (Doc. 23-8)).  Defendants do not dispute that these performances occurred, and the court therefore finds the fourth element of an infringing performance claim satisfied.

As to the final element of a copyright claim, plaintiffs have proved that defendants did not have a license to perform any of the compositions here in question. Defendants have submitted to the court a license they executed with the ASCAP–another licensing service–on December 19, 2008. (See Doc. 28-4). The defendants and ASCAP signed this agreement on December 19, 2008, well after plaintiffs initiated the action. (Id.). This license purports to cover a one-year period beginning January 1, 2008. (Id.). In his deposition, Defendant Tarapchak contends that this license actually provided coverage from July 1, 2007 until December 31, 2009. (Doc. 28 at ¶ 8). Even if the court were to accept that the license covers eighteen months more than it appears to, defendants point to no evidence which indicates that the ASCAP license permitted performance of BMI songs. Uncontradicted evidence in the case indicates as well that defendants and BMI attempted to negotiate a license agreement over the course of several years. (See Affidavit of Lawrence E. Stevens (Doc. 23-8) at ¶¶ 4, 7-8; Exh. B to Stevens Affidavit (Docs. 23-9, 23-10, 23-11)). Plaintiffs offered defendants agreements that would cover the period from 2005 to 2008[2], but defendants never signed those agreements. Thus, on October 6 and 7, 2007, defendants did not possess a performance license for the songs that are the subject of the complaint.

Defendants argue that they should not be liable for any infringement because

_____

[2]It appears to the court that businesses often sign retroactive licensing agreements, particularly after threatened with a court action.

plaintiffs thwarted their attempts to understand what music the BMI license covered. Moreover, even when defendants attempted to purchase a license, the terms of the license plaintiffs offered did not reflect accurately the size of their business and thus charge an excessive fee. They cite to no case law, however, that would excuse their infringement because of these difficult negotiations.[3] Indeed, such arguments better address the willfulness of the violations, an issue to be addressed in damages. In any case, courts have held that the failure of organizations like BMI to provide defendants with a list of the songs in their catalog does not excuse a copyright violation, especially when other means existed by which a defendant could determine whether the company controlled the use. See, e.g., Broadcast Music, Inc. v. Niro's Palace, Inc., 619 F. Supp. 958, 962 (N.D. Ill. 1985); Chess Music, Inc. v. Sipe, 442 F. Supp. 1184, 1185 (D. Minn. 1977) (defendant "should not profit at the expense of . . . song composers by instructing musical groups not to play copyrighted music and by claiming ignorance as to their program."); Famous Music Corp. v. Bay State Harness Horse Racing & Breeding, 554 F.2d 1213, 1215 (1st Cir. 1977) (denying an estoppel defense to infringement when plaintiffs did not provide a list of copyrighted songs but defendant "failed to take advantage of any of the steps available to secure the information it claims to have desired."). Here, plaintiffs

---

[3]Such negotiations also appear to have occurred after the actual violations at issue here. (See Exh. 2 to Alexander Tarapchak Affidavit (Doc. 28-3)). The license that the defendants proposed would cover the period from November 1, 2008 until October 31, 2009, well after the violations occurred.

pointed defendants to the BMI website, which contains a list of all of the compositions the license would cover.  (See http://www.bmi.com/search/).   A similar feature exists on the ASCAP website.  (See http://www.ascap.com/ace/search.cfm?mode=search).

Defendants also argue that they cannot be liable because they did not authorize the copyright violations by the band that performed at the restaurant.  The court finds that both the corporate and the individual defendants are liable for the infringement that occurred at the restaurant.  Courts have held that the performer of copyrighted material without a license has infringed the copyright, and an "entrepreneur who sponsors such a performance is also an infringer–direct or contributory.'" Twentieth Century Music Corp. v. Aiken, 422 U.S. 151, 157 (1975).  Here, it is beyond dispute that Defendants Its Amore Corp. and T & M Corp. sponsored the infringing performances, since they were the proprietors of the restaurant where those performances took place.  As such, they are liable for the infringement.  See, e.g., Blendingwell Music, Inc. v. Moor-Law, Inc., 612 F.Supp. 474, 481 (D. Del. 1985) (finding that defendant was liable as either a "direct or contributory infringer" because it was proprietor of the place where the offending performances occurred).

Plaintiffs also argue that the individual defendants are liable for the infringement that occurred in the restaurant.  Defendants dispute this contention,

insisting that no evidence indicates that the individual defendants should be assigned contributory liability in this matter. "It is well established that a corporate officer will be liable as a joint tortfeasor with the corporation in a copyright infringement case where the officer was the dominant influence in the corporation, and determined the policies which resulted in the infringement." Sailor Music v. Mai Kai of Concord, Inc., 640 F.Supp. 629, 634 (D. N.H. 1984). Moreover, "'one may be vicariously liable if he has the right and ability to supervise the infringing activity and also has a direct financial interest in such activities.'" Id. (quoting Boz Scaggs Music v. KND Corp., 491 F.Supp. 908, 913 (D. Conn. 1980)). Defendant Alexander J. Tarapchak submitted an affidavit in connection with his brief in opposition to plaintiffs' motion. (See Doc. 28). In that document, Tarapchak relates that he is the president and owner of Its Amore Corporation. (Id. at ¶ 1). Though Tarapchak owned the restaurant, he left "day-to-day operations" to Defendant Vince Marinaro, the manager. (Id. at ¶ 4). Tarapchak believed that the professional musicians they hired to perform had proper rights to use the songs they played. (Id.).

Defendants argue that Tarapchak did not supervise any of the activities on the day in question and thus did not knowingly contribute to the infringement, and cannot be liable. Defendants cite to Columbia Pictures Indus. v. Redd Horne, 749 F.2d 154 (3d Cir. 1994) to argue that Tarapchak could not be liable in the contributory sense unless he "knowingly initiated and participated in the alleged infringement or that he

ignored repeated requests and [sic] that he cease and desist such activity."
(Plaintiff's Brief in Opposition (Doc. 30) at 6-7).

The court finds that this case actually supports plaintiffs' claim.  Columbia Pictures arose out of a video rental store's unauthorized exhibition of films to paying customers in booths in the store.  749 F.2d at 157.  The court found that two individual defendants were liable for contributory infringement.  Id.  One of those defendants was "president and the sole shareholder" of the video store, and had "knowingly initiated and participated in the infringing activity, and ignored repeated requests from the plaintiffs that he cease and desist the activity."  Id.  The other defendant, though not a stockholder or officer of the company, had a direct financial interest in the company and had written letters and conducted negotiations on behalf of the company.  Id.  He thus "participated knowingly and significantly in the infringing activity and ignored the plaintiff's persistent requests that the activity cease."  Defendant Tarapchak's activities are similar to the defendants' in Columbia Pictures.  Like them, he arranged and controlled the business that supplied the platform for the infringing uses.  He knew that bands performed in the restaurant.  Tarapchak also ignored repeated requests from the plaintiffs that he obtain a license for these performances, as did the defendants in Columbia Pictures.  Thus, Tarapchak "participated knowingly and significantly in the infringing activity and ignored plaintiffs' persistent requests that the activity cease."  Id.  The court finds

13

Defendant Tarapchak liable for the infringement.[4]

In addition, Tarapchak could be vicariously liable for the infringement. "'A defendant is vicariously liable for copyright infringement if he has 'the right and ability to supervise the infringing activity and also has a direct financial interest in such activities.'" American Telephone and Telegraph Co. v. Winback and Conserve Program, 42 F.3d 1421, 1441 (3d Cir. 1994) (quoting Hard Rock Café Licensing Corporation v. Concession Services, Inc., 955 F.2d 1143, 1150 (7th Cir. 1992)); Blendingwell Music, Inc, 612 F. Supp. at 482. There is no dispute that Tarapchak had the right–as president and owner of the business–to supervise the offending performances, even if he was not at the restaurant on the day in question. Likewise, he had a financial interest in performances designed to attract patrons to his business. Tarapchak is therefore vicariously liable for the violations.

Because plaintiffs have established liability against all of the defendants on all five of the elements of their claim through uncontroverted evidence, the court finds that summary judgment is appropriate for the plaintiffs on their copyright infringement claim.

### ii. Damages

Plaintiffs' motion also seeks damages against the various defendants for the

---

[4]Defendants do not attempt to explain why Defendant Vincent Marinaro should not be liable in this matter. Instead, they contend that Marinaro supervised the daily activities of the restaurant. Marinaro is therefore clearly liable for the infringing activity, and the court will grant the plaintiffs' motion with respect to this defendant as well.

14

copyright violations.  Defendants have offered no argument on the propriety of the damages.

### a.  Injunction

The plaintiffs seek a permanent injunction to prevent further infringement of their copyrights.   Section 502(a) of the copyright act provides that a court may "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of copyright."  17 U.S.C. § 502(a).  Courts have found that "[w]hen past infringement and a substantial likelihood of future infringements is established, a copyright holder is ordinarily entitled to a permanent injunction against the infringer."  A & N Music Corp. v. Venezia, 733 F. Supp. 955, 957 (E.D. Pa. 1990); see also, Erni Mills, Inc. v. Empress Hotel, Inc., 470 F. Supp. 2d 67, 74 (D. P.R. 2006) (finding that "'[i]f liability is established and a continuing threat to the copyright exists, courts have usually granted permanent injunctions.'") (quoting Pedrosillo Music, Inc. v. Radio Musical Inc., 815 F.Supp. 511, 516 (D. P.R. 1993)).

Here, the plaintiffs have established liability.  They have also demonstrated a threat of continuing infringement.  Plaintiffs warned defendants repeatedly over a period of several years of the need to obtain a performance license for the compositions in their catalog, and defendants refused to do so.  They only obtained a license–and that from another licensing organization–after plaintiffs filed the instant action.  Defendants have to this date failed to obtain a licensing agreement from

15

Plaintiff BMI.  The court thus finds that there is a substantial likelihood that

defendants will continue to violate plaintiffs' copyrights.  A permanent injunction is

therefore appropriate.  See A & N Music Corp., 733 F.Supp. at 957 (finding a

permanent injunction appropriate because of an established copyright violation and

"a threat of continuing infringement in light of defendant's disregard of ASCAP's

repeated warnings concerning the need to have a proper licensing agreement.");

Broad. Music, Inc. v. Spring Mt. Area Bavarian Resort, LTD., 555 F.Supp. 2d 537,

544 (E.D. Pa. 2008) (finding that permanent injunction was in part justified because

"be believe it is likely that Defendants will infringe upon those rights again in the

future.").   The court will grant the motion for a permanent injunction.[5]

### b.  Money Damages

Plaintiffs seek monetary damages of $3,000 per copyright violation, arguing

that the violation was willful.  The copyright act provides that a copyright infringer "is

liable for either–(1) the copyright owner's actual damages and any additional profits

of the infringer . . . or (2) statutory damages, as provided by subsection (c)."  17

U.S.C. § 504(a)(1-2).  A copyright owner "may elect . . . to recover . . . an award of

statutory damages for all infringements involved in the action, with respect to any

one work . . . in a sum of not less than $750 or more than $30,000 as the court

considers just."  17 U.S.C. § 504(c)(1).  When the copyright owner proves a willful

---

[5]The injunction will end if the defendants secure the proper license.

copyright violation, "the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000." 17 U.S.C. § 504(c)(2). The decision of whether to award statutory damages is left to a "sound exercise of judicial discretion." <u>F.W. Woolworth Co. v. Contemporary Arts, Inc.</u>, 344 U.S. 228, 234 (1952). Plaintiffs here seek such statutory damages, contending that the infringement was willful. They seek $3,000 per violation.

To determine whether defendants' violation was willful, the court must consider "'whether the defendant had knowledge that [his] conduct represented infringement or perhaps recklessly disregarded the possibility.'" <u>Kepner-Tregoe, Inc. v. Vroom</u>, 186 F.3d 283, 288 (2d Cir. 1999) (quoting <u>Twin Peaks Prods., Inc. v. Publications Int'l, Ltd.</u>, 996 F.2d 1366, 1382 (2d Cir. 1993)). The court finds that defendants' conduct in failing to secure a license was willful. Plaintiffs wrote to defendants repeatedly to inform them of their infringing activities and to demand that they purchase a license. Plaintiffs provided defendants with information by which they could have determined whether songs performed in the restaurant required a BMI agreement. Plaintiffs also sent defendants a "cease and desist" letter informing them that they were violating plaintiffs' copyrights. As such, defendants were either aware of the infringement or willfully disregarded the possibility that the performance on the night in question violated the plaintiffs' copyrights. <u>See</u> <u>Prater Music v. Williams</u>, 5 U.S.P.Q.2d 1813, *8 (W.D. Mo. 1987) (finding that "[w]here a defendant

17

continues to infringe upon copyrights despite repeated warnings, courts have found defendant's conduct to be willful.").

Beyond the question of willfulness, in determining how much to award for copyright violations the court must also take into account the purpose of such awards, which is to compensate the plaintiff for lost profit and other injury, as well as "to discourage wrongful conduct." Woolworth, 344 U.S. at 233. Thus, "[t]he court's award should be designed to compensate plaintiffs as well as to punish defendant." Prater Music, 5 U.S.P.Q.2d at *9. "Recognizing the important deterrent purpose served by statutory damages, courts routinely compute statutory damages in cases . . . [involving copyright infringement] between two to six times the license fees defendants 'saved' by not obeying the Copyright Act." EMI Mills Music Inc. v. Empress Hotel, Inc., 470 F.Supp.2d 67, 75 (D. P.R. 2006).

The court finds that $1,500 per violation is a more appropriate number by which to calculate the damages. Plaintiffs have represented that if the defendants had purchased the proper licenses during the period in question, they would have paid $3,251.25 per year in fees. (Stevens Affidavit at ¶ 18). A current license would cost the defendants $4,292.50. (Id.). Thus, if defendants had purchased a license in March 2005, when BMI first contacted them, they would have paid purchased approximately three licenses before the time of the violation. Such licenses would have cost the defendants at minimum $3,251.25 x 3, or $9,753.75. Awarding

plaintiffs damages of $1,500 for each of the twenty-three established violations would award plaintiffs $34,500. An award of that amount would be around three and one-half times the amount of licensing fees that would have been paid for the period in question.[6] The court finds that such damages significantly exceeds the actual cost of a proper license and thus serves both to punish the defendants' conduct and discourage such future misconduct. Given the length of time during which the offending activity occurred and the deliberate, knowing nature of the violation, the award is also in line with the amounts awarded by other courts for similar circumstances. See, e.g., Broadcast Music, Inc. v. MacAluso, 19 U.S.P.Q.2d 1397, *4 (1990) (finding that $1,500 per violation was reasonable where violations were knowing and deliberate); Broadcast Music, Inc. v. Question Mark, 220 U.S.P.Q. 531, *5 (N.D. Tex. 1983) (finding $10,000 for each of nine infringements reasonable, "particularly in light of [defendant's] refusal of BMI's offer to grant a license."); Impulsive Music, Inc. v. Bryclear Enters., LLC, 483 F.Supp.2d 188, 190-91 (D. Mass. 2007) (finding an award of $2,500 per violation appropriate where defendants had "demonstrated wilfulness in ignoring" requests for to purchase a license).

### c. Attorney's Fees and Costs

The plaintiff also seeks attorney's fees and costs. The Copyright Act provides that "the court in its discretion may allow the recovery of full costs by or against any

---

[6]An award of $3,000 would be more than seven times the licensing fees for the period in question, which the court finds excessive, even though the violations were clearly willful.

party other than the United States or an officer thereof." 17 U.S.C. § 505. The Act

further provides that "the court may also award a reasonable attorney's fee to the

prevailing party as part of the costs." Id. "[T]he matter of fees under the Act is

entrusted to the discretion of the district court." Lieb v. Topstone Indus., 788 F.2d

151, 154 (3d Cir. 1986). A court is to use its discretion in determining whether to

award fees, and should consider factors such as "frivolousness, motivation, objective

unreasonableness (both in the factual and legal components of the case) and the

need in particular circumstances to advance considerations of compensation and

deterrence." Lieb, 788 F.2d at 156. Once a court has determined that awarding

fees is appropriate, the court "must then determine what amount is reasonable under

the circumstances." Id. Factors to be considered are "the relative complexity of the

litigation," the amount of fees charged the client, "the relative financial strength of the

parties," the damages, and whether or not bad faith existed. Id.

The court will grant the plaintiffs' request for attorney's fees. The actions of

the defendants in this case, who refused to enter into a performance license with the

plaintiffs despite the obvious need for one and then willfully infringed on plaintiffs'

copyrights, forced the plaintiffs to engage in litigation to protect their property.

Defendants have offered no tenable defense in this matter, largely admitting that

they allowed the infringing performances. Their legal position was therefore factually

untenable. Awarding attorney's fees to the plaintiffs is appropriate. See A & N

Music, 733 F. Supp. at 959 (awarding attorneys' fees to (1) deter future copyright infringement; (2) ensure that all holders of copyrights which have been infringed will have equal access to the court to protect their works; and (3) penalize the losing party and compensate the prevailing party.") (citations omitted).

As to the amount of fees, plaintiffs' counsel submitted an affidavit detailing the basis for his fees. (See Declaration of Stanley H. Cohen (Doc. 23-6)). In his affidavit, counsel represents that he has been responsible for all of the proceedings related to the action in this court. (Id. at ¶ 2). Counsel is an experienced copyright attorney, having filed or defended more than 175 civil actions involving copyright infringement over a career that spans more than forty years. (Id. at ¶ 6). He has offered numerous lectures on copyright litigation at continuing legal education seminars. (Id. at ¶¶ 8-16). Plaintiff's counsel represents that an hourly rate of $575.00 is a customary one for attorneys of his experience and expertise in Philadelphia, where he practices. Based on this experience, as well as the quality of the written submissions in this matter and the prevailing fee for services like counsel's, the court finds that plaintiff's hourly fee is a reasonable rate for the work performed. The defendants do not challenge this fee calculation. Counsel also submits to the court copies of each of the bills sent to BMI for the work he performed, as well as worked performed which had not yet been billed at the time of his affidavit. (See Exh. A to Cohen Affidavit, Cohen Affidavit at ¶ 23). The court

finds that the time spent on the various tasks described in counsel's billing was reasonable given the length and complexity of the litigation, as well as the defendants' unwillingness to take the need for a license seriously, and will award plaintiffs their requested attorney's fees of $27,830.00.

Plaintiffs also seek to recover their costs, which are available to the prevailing party under the Copyright Act. <u>See</u> 17 U.S.C. § 505. The court finds awarding of costs appropriate because of the defendants' willful infringement and unwillingness to negotiate and agreement until after the plaintiffs filed their court action. The defendants forced litigation, and shall bear the costs. According to counsel's affidavit, plaintiffs' costs for filing and serving the litigation amounted to $625.00. (Cohen Affidavit at ¶ 25). The court will order the defendants to pay those costs. In sum, then, defendants will be required to pay a total of $28,455.00 in attorney's fees and costs.

**Conclusion**

For the reasons stated above, the court will grant the plaintiffs' motion for summary judgment. The court will also grant the plaintiffs' request for a permanent injunction and award plaintiffs $34,500 in damages and $28,455.00 in costs and counsel fees. An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BROADCAST MUSIC, INC.,** | : | No. 3:08cv570 |
| **HARRICK MUSIC, INC.,** | : | |
| **EMI VIRGIN SONGS, INC., d/b/a** | : | (Judge Munley) |
| **EMI Longitude Music,** | : | |
| **STONE DIAMOND MUSIC** | : | |
| **CORPORATION ,** | : | |
| **MICHAEL JOE JACKSON, d/b/a** | : | |
| **MiJac Music,** | : | |
| **DIMENSIONAL MUSIC PUBLISHING,** | : | |
| **LLC, d/b/a Songs of the Knoll,** | : | |
| **LOWERY MUSIC COMPANY, INC.,** | : | |
| **WARNER-TAMERLANE PUBLISHING** | : | |
| **CORP.,** | : | |
| **CAN'T STOP MUSIC, a division** | : | |
| **of Can't Stop Productions, Inc.,** | : | |
| **JAMES W. BUFFETT, d/b/a Coral** | : | |
| **Reefer Music,** | : | |
| **FOURTEENTH HOUR MUSIC, INC.,** | : | |
| **SPRINGTIME MUSIC, INC.,** | : | |
| **CHRYSALIS STANDARDS, INC.,** | : | |
| **SONY/ATV SONGS, LLC, d/b/a Sony/** | : | |
| **ATV Acuff Rose Music,** | : | |
| **ROY KELTON ORBISON, JR., d/b/a** | : | |
| **R-Key Darkus Publishing,** | : | |
| **ALEXANDER ORBISON, d/b/a Orbi-** | : | |
| **Lee Publishing,** | : | |
| **BARBARA ORBISON as Trustee,** | : | |
| **d/b/a Barbara Orbison Music** | : | |
| **Company,** | : | |
| **MUSCLE SHOALS SOUND** | : | |
| **PUBLISHING CO., INC.,** | : | |
| **RANDOR MUSIC INTERNATIONAL,** | : | |
| **INC., d/b/a Irving Music,** | : | |

23

| | |
|---|---|
| **FORT KNOX MUSIC, INC.,** | : |
| **TRIO MUSIC CO., INC.,** | : |
| **G. LOVE, a/k/a Garret Dutton, d/b/a** | : |
| **Chicken Platters,** | : |
| **Plaintiffs** | : |
| | : |
| **v.** | : |
| | : |
| **IT'S AMORE CORP.,** | : |
| **T & M DRAM CORP.,** | : |
| **ALEXANDER J. TARAPCHAK, and** | : |
| **VINCE MARINARO,** | : |
| **Defendants** | : |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## <u>ORDER</u>

**AND NOW**, to wit, this 30th day of June 2009, the plaintiffs' motion for

summary judgment (Doc. 23) is hereby **GRANTED**. It is further ordered that:

1) Plaintiffs shall recover from Defendants Its Amore Corp., T & M Dram

Corp., Alexander J. Tarapchak and Vince Marinaro, jointly and severally,

statutory damages in the amount of one thousand five hundred dollars

($1,500) for each of the twenty-three (23) copyrights of musical compositions

they infringed in this case, for a total $34,500, pursuant to 17 U.S.C. §

504(c)(1);

2) Plaintiffs shall recover from Defendants Its Amore Corp., T & M Dram

Corp., Alexander J. Tarapchak and Vince Marinaro, jointly and severally, full

costs in this action, including reasonable attorney's fees, in the amount of

$28,455.00, pursuant to 17 U.S.C. § 505;

3) Plaintiffs shall recover from Defendants Its Amore Corp., T & M Dram

Corp., Alexander J. Tarapchak and Vince Marinaro, jointly and severally,

interest on the full amount of this judgment, from the date of the judgment,

pursuant to 28 U.S.C. § 1961;

4) Defendants Its Amore Corp., T & M Dram Corp., Alexander J. Tarapchak

and Vince Marinaro, and their agents, servants, employees and all persons

acting under their permission or authority shall be permanently enjoined and

restrained from infringing, in any manner, the copyrighted musical

compositions licensed by Broadcast Music, Inc.; and

5) The Clerk of Court is ordered to **CLOSE** the case.


          **BY THE COURT:**

          <u>s/ James M. Munley</u>
          **JUDGE JAMES M. MUNLEY**
          **UNITED STATES DISTRICT COURT**